**HARRISON WESTERN CORPORATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, et al., Defendants-Appellants.**

No. 85–3633.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1985.

Decided June 25, 1986.

Theodore T. Davis, Thomas C. Clark, Darrell J. Skelton, Wheat Ridge, Colo., for plaintiff-appellee.

J. Christopher Kohn, John W. Showalter, Allen L. Lear, Washington, D.C., for defendants-appellants.

Before ANDERSON, FARRIS and NELSON, Circuit Judges.

NELSON, Circuit Judge:

The United States Government appeals from an order of the district court granting summary judgment for Harrison Western Corporation (hereinafter "HWC"). Because the case has become moot pending disposition, we vacate the district court's judgment and remand with instructions to dismiss the complaint.

I

On April 2, 1984, HWC entered into a contract with the Department of Interior, Bureau of Reclamation (hereinafter "the Government") for the construction of an irrigation project known as the West Oakes Test Area Distribution System, Garrison Diversion Unit. Special Provision 8, entitled "Funds Available for Earnings," required HWC to notify the Government whenever it believed that funds reserved to the contract would be exhausted within the next thirty days. Upon the exhaustion of available funds, HWC had the right to suspend (without compensation) all work on the project pending additional appropriations. If Congress failed to provide the "expected additional funds during its regular session," HWC was entitled to terminate the contract thirty days "after pas-

sage of the act which would ordinarily carry an appropriation for continuing the work."

On June 27, 1984, HWC notified the government that on or about July 31, 1984, it would exhaust the two and one-half million dollars reserved to the contract for fiscal year 1984 (ending September 30, 1984). The Government responded on July 5, 1984, advising HWC that the amount reserved for fiscal year 1984 would not be increased.

On July 27, 1984, HWC notified the Government that it was exercising its right to terminate the contract effective August 16, 1984, in view of Congress' failure to provide the "expected additional funds" contemplated in Special Provision 8. HWC asserted that the funds authorized by the 1985 Energy and Water Development Appropriations Act (signed into law July 16, 1984) were not available for use on an annual basis and could not be used prior to January 1, 1985, and that their availability was entirely dependent upon the recommendations of the Secretarial Commission established under the Act.

On August 14, 1984, the Government denied that HWC was entitled to terminate the contract, and ordered the company to suspend work on the contract pursuant to General Provision 17. That provision, entitled "Suspension of Work," gave the Government the right to suspend work so long as it compensated HWC for any increase in the cost of performance caused by the delay.

HWC filed a complaint in the United States District Court for the District of Montana, praying for the following relief: (i) a declaration that the 1985 Energy and Water Developmental Appropriations Act did not constitute an appropriation of expected additional funds, and that HWC's termination of the contract was therefore proper; (ii) a declaration that, in suspending work under the contract, the Government had violated the Anti-Deficiency Act, 31 U.S.C. §§ 1341 and 1342; and (iii) an injunction forbidding the Government from requesting HWC to perform further work

under the contract, or from issuing a default termination for HWC's refusal to perform further work under the contract. The Government made no counterclaim.

The Government filed motions for dismissal and summary judgment, arguing that the district court lacked subject matter jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.*, and the Tucker Act, 28 U.S.C. §§ 1346 and 1491. HWC responded and filed a counter-motion for summary judgment.

On December 17, 1984, the district court entered its judgment for HWC from which the Government appeals. Subsequently, the Secretarial Commission issued a report recommending that the project be completed. In the spring of 1985, the Government solicited bids for completion of the work remaining after HWC's cessation of performance. Among the bidders was HWC, which submitted what the Government determined to be the lowest responsible bid. On July 22, 1985, HWC was awarded the new contract. It then filed with this court a motion to dismiss this appeal, because the new contract had rendered moot "[t]he question of whether the contract was [properly] terminated pursuant to the termination provision," as well as the question of whether "the actions of the Government [had] violated the Anti-Deficiency Act." The Government opposed the motion, noting that the excess cost of the second contract over the first was more than two million dollars.

## II

The exercise of judicial power under Article III of the Constitution requires the existence of a case or controversy. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983); *Enrico's Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir.1984). That requirement must be satisfied at all stages of review; it is not sufficient that the controversy was live at the time the complaint was filed. *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974).

HWC contends that the second contract has extinguished all claims and rights under the first, so as to render meaningless the award of declaratory and injunctive relief it had originally sought. Our assessment of that contention is governed by federal common law, *see United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944) ("The ... construction of contracts [executed by the United States] ... present[s] questions of federal law not controlled by the law of any State."); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir.) (federal common law applies to all federal government contracts), *cert. denied*, —— U.S. ——, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985), fashioned from general principles of contract interpretation. *See United States v. Seckinger*, 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *Saavedra v. Donovan*, 700 F.2d 496, 498 (9th Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983).

In *Morris & Cumings Dredging Co. v. United States*, 61 Ct.Cl. 411 (1926), the federal government and a private contractor also entered into a contract arguably covering the same subject matter as an earlier agreement between the two. The government refused to pay the amount owing under the second contract, asserting that the contractor was already obligated to perform that work under the first. The Court of Claims disagreed. It held that when the government entered into the supplemental contract, the effect was an abandonment of any claim it may have had under the first contract for items covered by the second. *See id.* at 419. Similarly, in *United States ex rel. International Contracting Co. v. Lamont*, 155 U.S. 303, 309, 15 S.Ct. 97, 99, 39 L.Ed. 160 (1884), the Supreme Court concluded that a private contractor effected an abandonment of its rights against the government under a first contract by agreeing to a second contract which called for the performance of the same work at a lower fee. Nor was the contractor's position bettered by the fact that he had brought the lawsuit before executing the second contract and had asserted the existence of rights under the first when agreeing to the second. *See id.; see also Mitsubishi Aircraft International, Inc. v. Brady*, 780 F.2d 1199, 1202 (5th Cir.1986) (execution of second agreement effected an "unconditional rescission" of first agreement covering same subject matter, notwithstanding the lack of an explicit release); *Cooperative Refinery Ass'n v. Consumers Public Power District*, 190 F.2d 852, 857, 859 (8th Cir.1951) (legal effect of uncontingent contract is implied rescission of another prior one covering same subject matter, despite an intention by one of the parties that the original contract remain in force).

 Applying the reasoning of these cases here, we conclude that any claims the Government may have had against HWC under the first contract were abandoned upon the signing of a second contract which was complete in itself, covered the same subject matter, and contained no reservation of rights. Had the Government wanted to reserve its rights under the first contract, it should have done so explicitly in the second.[1] Accordingly, we dismiss this appeal as moot.

We turn next to the problem of what to do with the district court's judgment. If, while an appeal is pending, the underlying case becomes moot, the usual practice is to vacate the judgment below and direct the district court to dismiss the complaint. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950); *Walker v. Huston*, 689 F.2d 901, 903 (9th Cir.1982). In *Ringsby Truck Lines v. Western Conference of Teamsters*, 686 F.2d 720, 723 (9th Cir.1982), however, this circuit refused to vacate a district court judgment where the parties had reached settlement pending appeal. Instead, the case was remanded so that the district court might decide whether to vacate its judgment in light of "the conse-

---

1. The Government does not contend that it was compelled, either for legal or business reasons, to execute a second contract with HWC without such a reservation of rights.

quences and attendant hardships of dismissal or refusal to dismiss." *Id.* at 722. The court reasoned that " '[i]t would be quite destructive to the principle of judicial finality to put a litigant [dissatisfied with a trial court's findings] in a position to destroy the collateral conclusiveness of a judgment' " by forgoing an appeal. *Id.* at 721 (quoting 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.416[6], at 2327 (2d ed. 1982)).

■ In light of that reasoning, we need not feel compelled to follow *Ringsby* in this case. Here, the very act which rendered the appeal moot—the signing of the second contract—also precludes the Government from bringing any claim related to the first contract. Accordingly, the collateral effects of the district court's judgment are adequately preserved by our dismissal of the appeal. We need not be troubled by the possibility of the Government's relitigating an issue already decided by the district court. In short, we do not have a *Ringsby* problem here. Therefore, we adopt the usual practice and vacate the judgment of the district court with instructions to dismiss.[2]

VACATED and REMANDED.

---

**2.** Mindful that *Ringsby* has been roundly criticized, *see* 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.10, at 431–32 (2d ed. 1984), we also think it significant that the act which rendered this controversy moot required the participation of *both* parties. Without HWC's consent, there would have been no second contract. Insofar as the prevailing party causes an appeal to become moot, preser-

vation of the district court judgment is problematic. By leaving that judgment in place, the appellate court may allow the prevailing party to preclude an appeal while retaining the collateral effects of its trial court victory. The appellate court ought to be particularly wary where, as here, it is the prevailing party that moves for dismissal, and the losing party that opposes the motion.