NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Plaintiff–Appellant,

v.

SEAFIRST CORPORATION,
Defendant–Appellee.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Plaintiff–Appellant,

v.

SEAFIRST CORPORATION, Defendant,

and

Davis, Wright & Jones,
Defendant–Intervenor–Appellee.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PA., Petitioner,

v.

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, Respondent,

and

Davis, Wright & Jones; Marsh & McLennan; Arthur Andersen & Co., Respondent–Intervenor,

and

Seafirst Corporation, Real Party in Interest.

Nos. 88–3970, 88–4342 and 88–7248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1989.

Decided Dec. 12, 1989.

Bradley D. Stam, Michael D. Helgren, Timothy K. Thorson and Gregory C. Narver, Culp, Guterson & Grader, Seattle, Wash., for plaintiff-appellant.

Bruce E.H. Johnson and Bruce Lamka, Davis, Wright & Jones, Seattle, Wash., for Davis, Wright & Jones.

Phillip H. Ginsberg, William R. Bishin and Patrick S. Brady, Ginsberg & Stanich, Seattle, Wash., for Marsh & McLennan.

Richard M. Clinton, Ronald T. Schaps and Lucy P. Isaki, Bogle & Gates, Seattle, Wash. and Robert D. McLean, John M. George, Jr., and Frank B. Vanker, Sidley & Austin, Chicago, Ill., for Arthur Andersen & Co.

Before HUG, FARRIS and REINHARDT, Circuit Judges.

FARRIS, Circuit Judge:

National Union Fire Insurance Company of Pittsburgh, Pa. and Seafirst Corporation reached a comprehensive settlement after judgment was entered against National Union in Part I, of a planned two part trial. As part of the settlement Seafirst supported National Union's motion to vacate the judgment that was entered against National Union in Part I of the trial. The district court denied the motion. National Union seeks a writ of mandamus or alternatively appeals. We deny the writ, take the case on appeal, and affirm the district court.

### FACTS

National Union issued $55 million of "directors and officers" liability insurance to Seafirst in October 1982. This policy insured Seafirst directors and officers for certain acts of negligence committed during the course of their employment. It was a secondary, or "excess," policy that would cover claims exceeding existing Seafirst D & O insurance from another carrier.

In March of 1985, National Union instituted the underlying lawsuit against Seafirst for declaratory relief under 28 U.S.C. § 2201, seeking rescission or reformation of the insurance contract. National Union claimed Seafirst had procured the policy through fraud and misrepresentation. Seafirst counterclaimed, alleging that by not paying claims against Seafirst's directors and officers, National Union had breached the insurance contract and had acted in bad faith. The case was bifurcated for trial. Phase I was to determine National Union's fraud claims. If Phase I found no fraud or misrepresentation, then Phase II would determine Seafirst's claims for coverage under the policy and for bad faith.

National Union also brought separate actions against Seafirst's attorney (Davis, Wright), independent accountant (Arthur Andersen), and insurance broker (Marsh & McLennan) for claims arising out of the same transaction. Davis, Wright, Andersen and Marsh & McLennan now intervene

in this Phase I appeal. National Union, at one point, moved to join Marsh & McLennan in the original suit against Seafirst, but it never moved to join Davis, Wright or Andersen. Joinder of Marsh & McLennan was refused on the ground that the proposed addition "at this late juncture ... would unduly complicate and confuse the case, introduce new legal issues, raise the possibility of differing burdens of proofs ..., and involve delays in the completion of discovery and the beginning of trial." District Court Order Regarding Discovery Conference, 25 February, 1987 at 2.

After a four week trial, the jury, by special verdict, found against National Union: the D & O policy had not been obtained by fraud or misrepresentation. The district court entered final judgment upon that verdict on March 25, 1988. On April 8, National Union moved to set aside that judgment and for a new trial of Phase I.

Shortly thereafter, National Union and Seafirst reached a settlement wherein National Union would withdraw its motion for a retrial of Phase I and would forego its appellate rights. Both parties would forego trying Phase II liability. Seafirst expressly agreed that National Union would be allowed to pursue Seafirst's insurance broker, attorney, and independent accountant for damages arising from their involvement in the procurement of the D & O insurance policy. National Union would also pay money damages of less than Seafirst's claims against National Union. The parties stipulated to, and the court ordered, that each party's claims against the other be dismissed with prejudice and that each would bear its own costs.

National Union thereafter moved to vacate the judgment of the district court on the theory that "[i]t is generally recognized that parties are 'free to settle on terms that require vacation of [a] judgment' and that the courts will honor such agreements," citing 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3533.10, at 432 (2d ed. 1984). National Union also relied upon cases dealing with

Fed.R.Civ.P. 60(b), but did not suggest Rule 60(b) as grounds for vacatur.

Although vacation of the judgment was not a condition of the settlement, Seafirst filed a motion in support of vacatur on the grounds that its "settlement agreement with National Union provides in pertinent part that 'Seafirst will support a motion by National Union to vacate the Judgment ...' in this action. Accordingly, Seafirst hereby joins in National Union's Motion to Vacate...."

Upon learning of the motion to vacate, Davis, Wright and Marsh & McLennan moved to intervene as parties-defendant. Arthur Andersen was joined later.

The motion to vacate was denied. The district court's order stated, in pertinent part, that

[w]hile Plaintiff is correct that in most cases the court will respect a settlement agreed to by the parties, this case is an exception. This court finds that it would not serve the interests of justice to vacate either the judgement or the injunction [1]. To do so would not only affect the rights of other litigants, but would nullify two decisions—one by this court [the injunction], another by a jury—reached after careful and judicious consideration of factual patterns that have not changed.

In June of 1988, Davis, Wright petitioned the district court for declaratory relief and summary judgment in the case brought against it by National Union. Summary judgment was granted for Davis, Wright. *Davis Wright & Jones v. National Union Fire Insurance Co.*, 709 F.Supp. 196 (W.D. Wash.1989). Similarly, while awaiting this appeal, National Union had summary judgment entered against it in its action against Marsh & McLennan, *National Union Fire Insurance Co. v. Marsh & McLennan*, No. 86-2-18564-0 (Super.Ct., King County, Wash., May 4, 1989), (Order Granting Marsh & McLennan's Motion for Summary Judgment), and in its action against Davis Wright, *National Union Fire Insurance Co. v. Davis, Wright, Todd, Riese & Jones*, Index No. 24810/85 (Sup.Ct., New York

---

**1.** The injunction mentioned is a separate issue, not a subject of this appeal.

County, N.Y., June 27, 1989) (order granting Davis, Wright motion to dismiss).

### STANDARD OF REVIEW

■ In deciding whether the district court properly applied the *Ringsby* rule of weighing the hardships and equities that vary the balance "between the competing values of finality of judgment and right to relitigation of unreviewed disputes," *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir.1982), we review for abuse of discretion.

### DISCUSSION

#### I. *The writ of mandamus is denied and the case is decided on appeal*

National Union filed its writ of mandamus out of concern over precedent that does not allow an appeal when, as was initially true here, the district court is the only respondent. However, the Intervenor–Appellees satisfied the requirement for adverse parties. Further, under certain circumstances, we permit appeals where the district court is the only respondent. *See Diamond v. United States District Court*, 661 F.2d 1198 (9th Cir.1981).

The Writ is denied and we hear the case as an appeal.

#### II. *Grounds for vacatur*

There are several circumstances in which a final judgment may be vacated. Fed.R. Civ.P. 60(b) is perhaps the most familiar grounds for a party to seek vacatur. The Supreme Court or any other appellate court also has broad discretion to vacate or modify any judgment properly before it, as is "just under the circumstances." *See* 28 U.S.C. § 2106.

National Union offers neither of these as a basis for its motion. We assume that it relies upon *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950): "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." 340 U.S. at 39, 71 S.Ct. at 106. This is the "duty of the appellate court." 340 U.S. at 40, 71 S.Ct. at 107, quoting *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178 (1936). It "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." 340 U.S. at 40, 71 S.Ct. at 107.

#### III. *Vacatur of judgments*

##### 1. *Introduction*

The motion to vacate was made to the district court after the parties settled while a motion for retrial of Phase I was before that court. The question of vacatur usually arises on motion to the appellate court, made after a settlement, pending appeal. In such circumstances the motion to vacate is accompanied by a request for the appellate court to remand with an order to dismiss. We have denied the motion to vacate in such circumstances, *see Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720 (9th Cir.1982) and discussion below, but have allowed the district court to decide the question on remand by balancing "between the competing values of finality of judgment and right to relitigation of unreviewed disputes." 686 F.2d at 722.

In this case, there was no remand since the motion was made directly to the district court. Its denial of the motion to vacate is the subject of the appeal.

The district court held that the existence of third-party interests and the investment of judicial resources tipped the equities in favor of finality. The district court could not avoid suspecting that National Union was motivated by a desire to avoid any *potential* preclusive impact on its other cases arising out of the D & O insurance policy.

##### 2. *Mootness and the* Munsingwear *rule*

■ In *Munsingwear*, the United States brought suit for injunctive relief and treble damages for alleged violation of price regu-

lations. The damages claim was held aside for a separate trial and the injunction was denied on the grounds that the challenged prices did not violate the regulations. While awaiting appeal of the denial of injunction, the products involved were deregulated. The appeal was dismissed as moot and the defendant argued that the district court's decision not to grant the injunction should be held as *res judicata* in the government's remaining claim for treble damages. The government argued that Congress had provided a right of appeal and that *res judicata* should not apply because "those who have been prevented from obtaining the review to which they are entitled should not be treated as if there had been review." 340 U.S. at 39, 71 S.Ct. at 106. The Court agreed, since review was denied by mootness through "happenstance." 340 U.S. at 40, 71 S.Ct. at 107. Thus in *Munsingwear*, the government would have been allowed to proceed against the defendant for damages because the deregulation was beyond its control; but it had "slept on its rights," 340 U.S. at 40, 71 S.Ct. at 107, and the damages claim was not allowed.

Two recent Supreme Court cases are instructive as to when *Munsingwear* applies. In *Burke v. Barnes*, 479 U.S. 361, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987), Congress disputed the President's claimed pocket veto of legislation. While awaiting decision from the Supreme Court, the legislation expired by its own terms. There no longer being a live case or controversy, the issue was moot. The decision of the court of appeals was vacated with direction to remand to the district court for dismissal of the underlying judgment, citing *Munsingwear*. If the Supreme Court had merely dismissed the appeal without vacating the underlying judgment, the opportunity for review would have been lost through no fault of the losing party. *See also United States Department of Treasury v. Galioto*, 477 U.S. 556, 106 S.Ct. 2683, 91 L.Ed.2d 459 (1986) (*Munsingwear* applied where Congress amended challenged law, removing the asserted unconstitutionality, which thereby mooted the dispute).

But in *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), a case made moot by the conduct of a party, the Court did not apply *Munsingwear*. In *Karcher*, an institutional appellant changed leadership. The new leadership dropped the appeal—effectively accepting the judgment as originally entered as if no appeal had ever been taken. "This controversy did not become moot due to circumstances *unattributable to any of the parties.* ... Accordingly, the *Munsingwear* procedure is inapplicable," 484 U.S. at 83, 108 S.Ct. at 395 (emphasis added). The judgment of the district court was left to stand. *Munsingwear* applies when the judgment is "unreviewable." *See Karcher*, 484 U.S. at 82–83, 108 S.Ct. at 395.

The question confronting us (like that confronting the court in *Ringsby* ) is whether "settlement" is within the reach of *Munsingwear*'s mootness through "happenstance." When a party settles, its case is not "unreviewable" in the terms of *Munsingwear, Barnes*, or *Galioto*, where there is no longer a case or controversy: Settlement is a conscious decision by the party, where it essentially "declines to pursue its appeal." *Karcher*, 484 U.S. at 83, 108 S.Ct. at 395. *See also Law Offices of Seymour Chase, P.C. v. FCC*, 843 F.2d 517, 522 n. 9 (D.C.Cir.1988); *Constangy, Brooks & Smith v. N.L.R.B.*, 851 F.2d 839, 842 (6th Cir.1988). This is not significantly different from when a party is satisfied with a judgment and does not appeal at all. The dispute is resolved, not made moot by action distinct from the litigation.

Further, when a case before the Court settles, the petition is dismissed under Sup.Ct. R. 53, but the judgment is not vacated. *See In re Memorial Hospital*, 862 F.2d 1299, 1301 (7th Cir.1988).

The *Munsingwear* rule is neither statutorily nor constitutionally required. It is equitable in nature, designed to maintain fairness between litigants who have been denied what would otherwise be an opportunity to challenge a prior adverse decision. *See also Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 721 (9th Cir.1982), quoting *Cover*

*v. Schwartz,* 133 F.2d 541, 546–47 (2d Cir.), *cert. denied,* 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942).

### 3. *The* Ringsby *rule*

■ In *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720 (9th Cir.1982), we articulated what has been referred to as an exception to the general *Munsingwear* procedure, but is more properly an issue distinct from that faced in *Munsingwear.* In *Ringsby,* the parties reached settlement after final judgment was entered, but before appeal was complete, and the appellant's motion to vacate the district court judgment was denied. We found

> the distinction between litigants who are and are not responsible for rendering their case moot at the appellate level persuasive. If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books. "It would be quite destructive to the principle of judicial finality to put such a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal." 1B Moore's Federal Practice ¶ 0.416[6] at p. 2327 (2d ed. 1982). That possibility would undermine the risks inherent in taking any controversy to trial and, in cases such as this one, provide the dissatisfied party with an opportunity to relitigate the same issues.

686 F.2d at 721.

We did, however, leave open the possibility that the district court, either the original trial court or the one in which preclusive effect of the judgment is being raised, had discretion to vacate the judgment. "[T]he consequences and attendant hardships of dismissal or refusal to dismiss remain to be explored; and the decision, on the facts of this case, between the competing values of finality of judgment and right to relitigation of unreviewed disputes should be left to the district court...." *Ringsby,* 686 F.2d at 722.

Although we recently reaffirmed this position in *Allard v. DeLorean,* 884 F.2d 464 (9th Cir.1989), National Union insists that *Ringsby* is of questionable value and greatly weakened. In *Allard,* we denied a motion to vacate after settlement and remanded, instructing "the district court [to] balance the competing interests of the parties in order to determine whether the judgment below should be vacated." 884 F.2d at 467. We now elaborate on the strength and merit of *Ringsby.*

■ National Union argues for a unilateral/bilateral distinction, which it claims we adopted in *Harrison Western Corp. v. United States,* 792 F.2d 1391 (9th Cir.1986). Under this proposed distinction, a case made moot by the action of one party to the action would not be vacated, but if made moot by action of both parties, for example through settlement, vacatur would be granted upon request. We understand but reject the argument. To allow bilateral action to justify vacatur of a court's judgment would not avoid the concerns expressed in *Ringsby.* Settlement is merely another way for the disgruntled party to secure dismissal of its appeal. Further, *Harrison* is distinguishable from *Ringsby.*

*Harrison* involved a disputed government contract. While the district court's decision in favor of Harrison, the contractor, was on appeal, Harrison submitted a bid and was selected by the government to complete the project that was left unfinished because of the original dispute. Harrison then moved to dismiss the government's appeal from Harrison's favorable decision. The government objected.

The court dismissed the appeal because any rights the government may have had "under the first contract were abandoned upon the signing of a second contract." 792 F.2d at 1393. In doing so, the court cited cases that "held that when the government entered into [a] supplemental contract, the effect was an abandonment of any claim it may have had under the first contract for items covered by the second." *Id.*

This was not a settlement as in *Ringsby.* The government opposed the motion to dismiss and desired to pursue its appeal against Harrison for the more than $2 million in excess cost of the second contract

over the first contract. The application of federal common law and the bidding process, not the agreement of the parties to stop fighting, caused the case against Harrison to become "unreviewable." Thus, it was appropriate to apply the *Munsingwear* rule and not the *Ringsby* rule.

*Harrison* is neither an endorsement of National Union's unilateral/bilateral distinction or a retreat from the reasoning of *Ringsby.*

### 4. *Criticism of* Ringsby

National Union urges us to adopt what is allegedly the Second Circuit's rule of granting vacatur when both parties agree to it. *See Nestle Co. v. Chester's Market, Inc.,* 756 F.2d 280 (2d Cir.1985) (criticizing *Ringsby*). *Nestle* involved a trademark dispute over the use of the words "Toll House" with cookies. The district court granted partial summary judgment against Nestle, who appealed. While on appeal a settlement was negotiated. Nestle, however, was still interested in pursuing the appeal and conditioned its settlement on the vacatur of the district court summary judgment, distinguishing it from *Ringsby* and the present case.

In *Nestle*, the question was not whether to vacate *because* the case was moot, but whether to vacate *to make* the case moot. The *Nestle* court found the *Munsingwear* rule "inapplicable ... because [the case] is not moot." 756 F.2d at 281. In fact, the court reviewed for abuse of discretion, *see* 756 F.2d at 281 (applying Fed.R.Civ.P. 60(b)), as we did in *Ringsby*. The court looked to *Munsingwear*, not because it applied, but because it was "instructive ... of the balance it strikes against the finality of judgments." 756 F.2d at 282.

The *Munsingwear* Court, however, *did not* vacate the underlying judgment. Rather, the Court paid respect to the importance of finality: "The case illustrates not the hardship of *res judicata* but the need for it in providing terminal points for litigation." *Munsingwear,* 340 U.S. at 41, 71 S.Ct. at 107.

The concern of the *Nestle* court was the competing interests of encouraging settlement and maintaining judicial finality. While we favor the policy of encouraging settlement, *see, e.g., Ahern v. Central Pac. Freight Lines,* 846 F.2d 47, 48 (9th Cir. 1988), settlement was already achieved here and in *Ringsby*. Further, *Ringsby* does not discourage settlement, although it may add slightly to its cost in two ways: first, there is a degree of uncertainty as to whether the judgment will be vacated, which will prompt the party desiring vacatur to extract a higher price from the other party; second, because *Ringsby* may require parties to make vacatur a condition of settlement, there may be delay while awaiting the court's decision on vacatur.[2] This cost is not so high that it should defeat 1) the public interest in maintaining judicial finality and 2) the legitimate interest of others in potential nonmutual preclusion.

Professors Wright, Miller and Cooper have also criticized *Ringsby*. *See* 13A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3533.10, at 431–32 (2d ed. 1984). They support the view that the parties should be allowed to vacate a judgment as part of settlement, citing as support "all the policies that make voluntary settlement so important a means of concluding litigation." *Id.* at 432. While this position is not without some merit, it is misleading to suggest, as they do, that such a rule is required by *Munsingwear* reasoning. We elect to weigh the policy interests differently.

### 5. *Support for the* Ringsby *rule*

In *In re Memorial Hospital,* 862 F.2d 1299 (7th Cir.1988), Judge Easterbrook writes strongly in support of the Seventh Circuit's rule to "always deny these motions to the extent they ask us to annul the district court's acts, on the ground that an opinion is a public act of the government, which may not be expunged by private agreement. History cannot be rewritten." 862 F.2d at 1300. The Seventh Circuit be-

---

**2.** We do not address the factors that a court should consider in balancing the value of finality of judgment and the right to relitigation of

unreviewed disputes where settlement is conditioned on vacatur.

lieves that the social value of precedent, "created at cost to the public and other litigants, [should not become] a bargaining chip in the process of settlement." 862 F.2d at 1302.

We find some merit in those sentiments but decline to adopt such an inflexible rule. To do so would raise the cost of settlement too high. The better view, in our opinion, is to consider the equities and hardships in resolving the question.

## IV. *Conclusion*

■ Given the third-party interests in this case and the possible, although uncertain status of any preclusive effect, the district court did not abuse its discretion in denying the motion to vacate. It listed sound reasons, supported by the record, for doing so. To the extent there may be preclusive effect, National Union should not be able to avoid those effects through settlement and dismissal of the appeal. The unilateral/bilateral distinction is unpersuasive. The court can prevent a party from removing all effects of a judgment through a post judgment settlement.

AFFIRMED.