FILED

AUG 08 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1216-FDKu |
| ) | |
| SoCAL SLEEP CENTERS, LLC, ) | Bk. No.   2:14-bk-28581-NB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MAUREEN JAROSCAK, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| ARCADIA HUB HOLDINGS 3, LLC; ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Appellees.[**] ) | |
| _____) | |

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed – August 8, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:     Robert Rice argued for Appellant Maureen Jaroscak;
                 Sumi Sakata argued for Appellee United States
                 Trustee.

Before: FARIS, DUNN, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[**] Arcadia Hub Holdings 3, LLC did not file an answering brief or otherwise participate in this appeal.

**INTRODUCTION**

Appellant Maureen Jaroscak appeals the bankruptcy court's imposition of sanctions against her for her conduct while she represented debtor SoCal Sleep Centers, LLC in its chapter 11[1] case. Ms. Jaroscak argues that she did not make any false statements or mislead the court. She contends that the court erred by sanctioning her, rather than her client, and refusing to amend its order (pursuant to the parties' stipulation) to sanction her client, rather than her.

Ms. Jaroscak's arguments on appeal are all meritless, and some are frivolous. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**

**A. The unlawful detainer action**

Arcadia Hub Holdings 3, LLC ("Arcadia Hub") owned commercial real property in Beverly Hills, California. Arcadia Hub's tenant, Beverly Hills Surgery Center, allegedly subleased some or all of the premises to SoCal Sleep Centers[2] without Arcadia Hub's knowledge.

In or around July 2014, Arcadia Hub began eviction proceedings in California Superior Court against Beverly Hills Surgery Center and filed an unlawful detainer action. Ms. Jaroscak, who is an attorney licensed to practice in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] SoCal Sleep Centers is allegedly a sleep clinic that diagnosed sleep abnormalities.

2

California, represented SoCal Sleep Centers.[3]  She signed a "Prejudgment Claim of Right of Possession" on behalf of SoCal Sleep Centers, in which she claimed that SoCal Sleep Centers occupied the premises when the unlawful detainer complaint was filed and had continued to occupy the premises ever since.

Inexplicably, Ms. Jaroscak also signed SoCal Sleep Centers' answer to the complaint, which took the opposite position. According to the answer, SoCal Sleep Centers "has tendered possession and keys to the premises to plaintiff.  Possession is no longer an issue in the proceeding and no complaint for unlawful detainer may be brought against the defendants."[4]

The superior court later struck SoCal Sleep Centers' prejudgment claim of right of possession as improperly executed. It entered judgment for possession and unpaid rent in favor of Arcadia Hub and against Beverly Hills Surgery Center.

**B.    SoCal Sleep Centers' chapter 11 bankruptcy**

On September 30, 2014, SoCal Sleep Centers filed a chapter 11 bankruptcy petition.  Ms. Jaroscak was listed as its attorney of record.

---

[3] Arcadia Hub alleged that Ms. Jaroscak also represented Beverly Hills Surgery Center.

[4] Ms. Jaroscak claims that this admission is a typo.  She asserts that it should have read, "Defendant has **not** tendered possession . . . ."  (Emphasis added.)  This assertion is not credible.  The very next sentence of the answer says that "[p]ossession is no longer an issue in this proceeding . . . ." The "correction" would make the answer internally and patently inconsistent.

3

### 1. SoCal Sleep Centers' schedules

SoCal Sleep Centers' bankruptcy filings were woefully deficient. Among other things, Ms. Jaroscak did not file a retention application[5] or disclosure of compensation, and she did not file any "first day motions" which are almost always necessary in a chapter 11 case.

SoCal Sleep Centers sought an extension to file its schedules and statement of financial affairs in a motion filed on October 14, 2014, the day those documents were due. SoCal Sleep Centers' manager, Mr. Oxman, submitted a declaration that SoCal Sleep Centers had been unable to submit its schedules, because, as a result of the landlord's unlawful detainer action and intimidation, "[a]ccess to debtor's business records to adequately complete the schedules has been severely impaired . . . ."

The bankruptcy court granted SoCal Sleep Centers an extension to file its schedules. SoCal Sleep Centers never filed the required schedules and statements.

### 2. Ms. Jaroscak's conflicting statements

Arcadia Hub filed a motion for relief from the automatic stay ("Motion for Relief"). It argued (among other things) that

---

[5] This was a serious omission. A person filing a retention application must disclose "all of the person's connections with the debtor," Rule 2015(a), so the court can evaluate whether the person is a "disinterested person," § 101(14), and "does not hold or represent an interest adverse to the estate," § 327(a). It was later revealed that Ms. Jaroscak's husband, Brian Oxman, is a manager of SoCal Sleep Centers. (Mr. Oxman was also Ms. Jaroscak's law partner until he was disbarred for misconduct.) Ms. Jaroscak should have disclosed these facts at the very inception of the chapter 11 case.

4

SoCal Sleep Centers had filed its bankruptcy petition in bad faith. Additionally, Arcadia Hub stated that it believed that SoCal Sleep Centers' suite "is effectively empty and that no personal property is located therein. . . . [N]o business has been conducted . . . for over one year since Tenants' '1-800-GET-THIN' marketing program was shut down by governmental investigators."

SoCal Sleep Centers opposed the Motion for Relief. Ms. Jaroscak submitted a declaration in support of the opposition in which she stated (among other things) that SoCal Sleep Centers was able to cure the rent arrearage and had tendered payment to Arcadia Hub. She said that SoCal Sleep Centers had not abandoned the property and attested that "SoCal Sleep Centers has sleep study equipment, computers, files, and reception area equipment and supplies on the premises and I have seen such equipment and fixtures. . . . SoCal Sleep Centers still maintains a presence at the medical suite." She further stated that "SoCal Sleep Centers operates out of that location."

On October 28, 2014, the same day that SoCal Sleep Centers filed its opposition to the Motion for Relief, the court held a status conference. Counsel for Arcadia Hub and the Office of the United States Trustee ("U.S. Trustee") informed the court that SoCal Sleep Centers had not filed many of the required documents, communicated with the U.S. Trustee, or appeared for its initial interview and § 341 meeting. They argued that the bankruptcy petition was filed in bad faith. Arcadia Hub represented that "[t]he premises have, in fact, been vacant for approximately a year. There is no business being conducted in the premises, and

5

has not been for approximately a year." Ms. Jaroscak responded that "we are still there. There are still files there. There is furniture there. There are computers there." She stated that "[t]he debtor is not insolvent."

The court expressed concern that SoCal Sleep Centers had not filed first day motions that would have addressed issues such as cash collateral, utilities, and payroll. The court required SoCal Sleep Centers to file an "extensive" status report, warning that it "may well have to dismiss the case . . . if there aren't some really good answers."

The very next day, SoCal Sleep Centers filed a motion to dismiss its chapter 11 case ("Motion to Dismiss"). It gave two reasons for requesting dismissal: (1) it was unable to comply with the court's filing requirements, since it "does not have access to its books, records, software, or files, to facilitate compliance with Chapter 11 filing requirements due to a government seizure of books and records on June 3, 2014[;]" and (2) it "does not have sufficient information to formulate a workable Chapter 11 plan within the next several months. The absence of its records and papers makes it impossible to complete this task." (Previously, SoCal Sleep Centers had blamed Arcadia Hub, not the federal government, for blocking access to its records.)

In support of the Motion to Dismiss, Ms. Jaroscak attested:

> 3. On June 3, 2014, the United States Attorneys' Office, including a task force of several government agencies, conducted a raid of several locations occupied by Beverly Hills Surgery Center, LLC, including [SoCal Sleep Centers' suite]. **I was personally present at the time of the raid**.

**4. As a result of the raid, business files, computers, software, patient records, and all records** belonging to . . . SoCal Sleep Centers, LLC, **were seized by the government and to date, have not been returned.** The raid effectively put all of the occupants . . . out of business. . . .

5. While requests to the federal government for return of some of the materials have been made by the other defendants, nothing of any substance has been returned by the government. **The other occupants at 9001 Wilshire, including SoCal Sleep Centers, LLC, have been unable to continue in their business operations.** Without access to books, records, and billing information, no billing can be sent and no revenue has been received since June 4, 2014. The money which SoCal Sleep Centers has offered to pay the landlord [has] come from the other occupants, and **SoCal Sleep Centers has no assets or funds available.**[6]

6. . . . . **SoCal Sleep Centers, LLC does not have access to their records to effectively comply with the US Trustee requirements, to make the motions required of it to be in compliance with Chapter 11 statutes and local rules, and to formulate a workable Chapter 11 Reorganization Plan.**

(Emphases added.)

**C. Hearings on the Motion for Relief and Motion to Dismiss**

The court held hearings on the Motion for Relief and Motion to Dismiss. Inexplicably, SoCal Sleep Centers did not appear at the hearing on the Motion for Relief, so the court granted the motion, terminating the automatic stay retroactively as of the petition date.

Ms. Jaroscak did appear at the hearing on the Motion to Dismiss and continued status conference. The court dismissed the

---

[6] Ms. Jaroscak claims that this admission is another unfortunate typo; she claims that she meant to say that SoCal Sleep Centers had "no **other** assets or funds available." (Emphasis added.) This is not plausible. Adding the word "other" would make the sentence absurd, because there is nothing in the paragraph to which "other" might refer.

7

case on its own motion with a 180-day bar on refiling and denied the Motion to Dismiss as moot. The court stated that it had "some real concerns about how the case commenced and how things progressed." The court contemplated issuing an order to show cause why SoCal Sleep Centers or Ms. Jaroscak should not be sanctioned: "it's a real concern to me that giving some leeway to the debtor for additional time to file schedules, giving some leeway to the debtor to be able to establish why relief from the automatic stay shouldn't be granted, continuing the hearing on that, and then it all turns out, 'Oh, never mind. None of that was really true.'"

Ms. Jaroscak defended her previous statements by saying that, at the time SoCal Sleep Centers filed its petition, it believed that it "would be able to put [itself] together and move forward." She stated that, after meeting with her client following the status conference, "it became apparent to me that my client was not going to be able to do that. They did not have the records. More importantly, when I enlightened them about the fact that if they were going to stay in the space that they were in, that they were going to have to continue to pay the current rent, which is approximately $25,000 a month, there is absolutely no way at this point that they could do that."[7] As for the

---

[7] This statement is troubling for at least two reasons. First, contrary to the implication of Ms. Jaroscak's statements, SoCal Sleep Centers knew that it had to pay rent; in response to Arcadia Hub's Motion for Relief, it had assured the court that it could and would cure the delinquent rent. Second, any competent attorney for a chapter 11 debtor in possession would have "enlightened" the debtor about the need to pay post-petition rent (continued...)

8

status of the business, Ms. Jaroscak stated that "[a]s far as the business going there, there is furniture there. There is some artwork there. There have been some other things there. I was there yesterday. They are not, at this point, effectively doing a business there."

**D.    The OSC**

In response to the U.S. Trustee's request for sanctions and initiation of disciplinary proceedings against Ms. Jaroscak ("Request for Sanctions"), the court issued its order to show cause (the "OSC") why Ms. Jaroscak should not be sanctioned or referred to the state's disciplinary board.

In response to the OSC, Ms. Jaroscak argued that she did not mislead the court and her statements "were essentially true, despite apparent inconsistencies."

First, regarding SoCal Sleep Centers' access to its documents (and ability to file schedules), Ms. Jaroscak argued that she did not conceal or lie about the government's seizure of SoCal Sleep Centers' records and that "there is no absolute need for Jaroscak to tell the court **all of the reasons** for why Debtor was having trouble getting access to documents," and that she was entitled to "exercis[e] her discretion" in presenting her client's case to the court. (Emphasis added.) "Jaroscak's decision to withhold this information was then merely an attorney deciding how much to tell the Court and when." Also, she claimed (for the first time) that SoCal Sleep Centers was "in the process

---

[7](...continued)
even before filing the petition because § 365(b)(3) requires the debtor in possession to do exactly that.

9

of trying to reconstruct its records."

Second, regarding the status of SoCal Sleep Centers' operations, Ms. Jaroscak argued that she had correctly informed the court that SoCal Sleep Centers "was attempting to maintain an active business even in the face of the loss of most of its most critical documents and records . . . ." She stated that, "although Debtor and other occupants moved certain equipment out of the Suite 106 during October, Debtor continued to try to maintain an active presence at Suite 106."

Prior to the hearing on the OSC, the court issued a tentative ruling wherein it indicated that it was inclined to sanction Ms. Jaroscak in the amount of Arcadia Hub's attorneys' fees pursuant to its inherent power. It said that Ms. Jaroscak's October 23, 2014 declaration in support of SoCal Sleep Centers' opposition to the Motion for Relief was "willfully misleading, submitted in bad faith, presented for the improper purposes of causing unnecessary delay and needless increase in the cost to Landlord of litigation, lacking sufficient evidentiary support, and not warranted by the evidence or on any stated and reasonable information and belief." It also indicated that it was inclined to hold an evidentiary hearing regarding additional sanctions, such as referral to the state's disciplinary board (i.e., public-interest sanctions).[8]

---

[8] The issue of other sanctions was resolved when Ms. Jaroscak agreed not to represent any party before the bankruptcy court in the Central District of California for a three-year period. Although Ms. Jaroscak agreed to that sanction, she has appealed from that order also (BAP No.
(continued...)

10

Following a hearing on the OSC, the court issued an order adopting its tentative ruling and awarded Arcadia Hub $18,987.82 ("Original Order").

**E.  Ms. Jaroscak's attempt to amend the Original Order**

Ms. Jaroscak did not appeal the Original Order.  However, there was a flurry of activity on March 6, 2015, the deadline to file a notice of appeal from the Original Order.  Ms. Jaroscak, through counsel, told Arcadia Hub's counsel that she "would like to amend the order to make the debtor instead of her liable for the sanctions."  Arcadia Hub initially stated in an e-mail that it "does not care who pays the sanctions" but was "not going to agree to amend the Order."  Ms. Jaroscak's counsel replied, "She does not have the money.  I can get the money from the client if the order is amended."  Later that day, a cashier's check drawn by Mr. Oxman was delivered to counsel for Arcadia Hub in the amount of the sanctions award.  Arcadia Hub's counsel then signed a stipulation to amend the Original Order by changing the last sentence from

> IT IS HEREBY ORDERED that Maureen Jaroscak shall pay to Arcadia Hub Holdings 3, LLC within fourteen days from the entry of this Order, sanctions in the sum of $19,407.82 - $420 = $18,987.82.

to

> IT IS HEREBY ORDERED that Debtor shall pay to Arcadia Hub Holdings 3, LLC within fourteen days from the entry of this Order . . . .

Arcadia Hub's counsel signed the stipulation to amend the

---

[8](...continued)
CC-16-1036).

11

Original Order ("Stipulation") on the afternoon of March 6, 2015, and Ms. Jaroscak's counsel says that he signed it the same day. The U.S. Trustee did not sign, and was not asked to sign, the Stipulation.[9]

Months later, on May 29, 2015, Ms. Jaroscak filed a motion to approve the Stipulation ("Motion to Approve Stipulation").[10]

The U.S. Trustee opposed to Motion to Approve Stipulation. Among other things, it pointed out that the motion was untimely because Ms. Jaroscak filed it over three months after the court entered the Original Order.

In response, Ms. Jaroscak argued that the Stipulation was executed in March 2015 and would have been timely if filed immediately. She blamed the failure to file the Motion to Approve Stipulation on the inadvertence of her attorney. She also stated that her counsel "discussed the proposed Stipulation with [counsel for the U.S. Trustee] and she indicated to him that the U.S. Trustee did not care about it. . . . [T]he OUST was aware of the terms of amendment and expressed no objection at the time."

At the hearing on the Motion to Approve Stipulation, the court indicated that it would "approve the stipulation

_____

[9] As discussed below, Ms. Dare Law, counsel for the U.S. Trustee, was included in certain e-mail correspondence but was removed from later communications wherein Ms. Jaroscak and Arcadia Hub agreed to the Stipulation.

[10] The court entered an order granting the Motion to Approve Stipulation shortly after it was filed, but later vacated the order because it was entered prematurely due to an internal clerical error.

notwithstanding the United States Trustee's argument, but with everybody understanding that what I've already decided is what I've already decided." Ms. Jaroscak's counsel confirmed that:

> I want to make sure it's clear that we're not sitting here saying that anything that you issued on that February 6th tentative ruling has changed. We're not -- the only thing that's changed is the one slight thing, which is that the sanctions will be paid by Arcadia Hub and, in fact, to Arcadia Hub by the debtor and in fact (indiscernible). Other than that, everything remains the same.

He later reiterated that "the Court awarded the sanctions that they were awarded. It's only amended that the debtor is to pay -- can pay the sanctions and everything that's in that order is unchanged other than that one small part. And I think it's -- I think it's very important here."

The court ruled that "if Arcadia chooses to accept a payment from another source then it can choose to do so . . . . It also still holds that the tentative ruling and the findings that were part of [the Original Order] are still very much extant." The court approved an amendment whereby the "new version would be that Arcadia is entitled to payment of its attorney's fees and based on the findings of fact and conclusions of law that I did before and that the source of the payment doesn't matter."

Ms. Jaroscak's counsel prepared the order amending the Original Order ("Amended Order"), which stated:

> The final paragraph of the Order for Payment of Sanctions by Maureen Jaroscak to Arcadia Hub Holdings 3, LLC [Docket No. 69] (the "Order") is hereby amended so that it shall read as follows:
>
> **IT IS HEREBY ORDERED** that Maureen Jaroscak or her designee shall pay to Arcadia Hub Holdings 3, LLC within fourteen days from the entry of this Order, sanctions in the sum of $19,407.82 - $420 = $18,987.82.

13

Notwithstanding the above amendment, all other parts of the Order remain fully in force and effect.

**F.    Appeal to the BAP**

On July 6, 2015, Ms. Jaroscak filed a notice of appeal from both the Original Order and the Amended Order.

On April 17, 2016, Ms. Jaroscak filed a motion to enforce settlement ("Motion to Enforce") with this Panel.  She stated that, on March 28, 2016, she, Arcadia Hub, and SoCal Sleep Centers entered into a "settlement" that allegedly resolved the appeal, since they reaffirmed the terms of the Stipulation.  The motions panel denied the Motion to Enforce without prejudice pending resolution of the merits of the appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  Subject to our discussion of the timeliness of this appeal, we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

(1) Whether Ms. Jaroscak timely appealed the Original Order.

(2) If so, whether the court abused its discretion in sanctioning Ms. Jaroscak.

(3) Whether the court abused its discretion in refusing to amend the Original Order pursuant to the Stipulation.

**STANDARDS OF REVIEW**

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error.  Hansen v. Moore (In re Hansen), 368 B.R. 868, 874 (9th Cir. BAP 2007).  "De novo review requires that we consider a matter anew, as if no decision

14

had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citation omitted). A bankruptcy court clearly errs if its findings were illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

We review for abuse of discretion the bankruptcy court's decision to alter or amend its own order. See Int'l Rehab. Sciences Inc. v. Sebelius, 688 F.3d 994, 1000 (9th Cir. 2012) (denial of Civil Rule 59(e) motion); Lal v. California, 610 F.3d 518, 523 (9th Cir. 2010) (denial of Civil Rule 60(b) motion). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its fact findings are illogical, implausible, or not supported by evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

DISCUSSION

**A.    Ms. Jaroscak did not timely appeal the Original Order.**

The U.S. Trustee argues that Ms. Jaroscak's appeal from the Original Order is untimely. Ms. Jaroscak argues that her notice of appeal from the Amended Order was timely and should relate back to the Original Order. We agree with the U.S. Trustee.

**1.    The Original Order was a final and appealable order.**

The U.S. Trustee argues that the Original Order was a final order from which Ms. Jaroscak could have appealed. Although Ms. Jaroscak does not challenge this assertion, we must consider it independently because it bears upon our jurisdiction over this appeal. See Symantec Corp. v. Glob. Impact, Inc., 559 F.3d 922,

15

923 (9th Cir. 2009).

In Eden Place, LLC v. Perl (In re Perl), 811 F.3d 1120 (9th Cir. 2016), the Ninth Circuit held that a bankruptcy court order determining that a creditor had violated the automatic stay was a final and appealable order, even though the bankruptcy court deferred ruling on the amount of sanctions for the violation. The court of appeals noted that it takes a flexible and pragmatic approach to "finality" in bankruptcy cases. Id. at 1127. The court reasoned that:

> There is no question that the discrete issue addressed by the bankruptcy court – violation of the automatic stay – has been definitively and finally resolved. Resolution of that issue is as final as it will ever be in this case.

Id.

Perl establishes that the Original Order was final for purposes of appeal. If anything, the Original Order was more final than the order that the Ninth Circuit considered in Perl, because the Original Order determined not only Ms. Jaroscak's liability for sanctions, but also the amount of those sanctions.

Similarly, our decision in Stasz v. Gonzalez (In re Stasz), 387 B.R. 271 (9th Cir. BAP 2008), considered, as a matter of first impression, whether an order granting civil contempt sanctions under Rule 9020 was final for the purposes of an immediate appeal. The Panel stated the general rule that "[a] final order 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. at 274 (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).

The Panel noted that, "[w]hile civil contempt orders entered 'during the course of a pending civil action' are not

16

appealable until final judgment, the Ninth Circuit has allowed immediate appeals of sanctions orders that dispose of the only issue before the court." Id. at 275. The Panel thus determined that the sanctions order was properly appealable, because "[i]f the award of sanctions were not appealable now, it is unclear when the order would become final and appealable. Unlike an adversary proceeding or a civil action outside bankruptcy, the culmination of the bankruptcy case does not result in a final judgment." Id. at 276.

Similarly, the Original Order in the present case was immediately appealable. It ended the litigation regarding private sanctions against Ms. Jaroscak and left the court with nothing to do but execute the order. Although the bankruptcy court here did not rely on Rule 9020, the result is the same, as there was no further litigation that would preclude finality of the Original Order.

Under Rule 8002(a)(1), "a notice of appeal must be filed with the bankruptcy court within 14 days after entry of the judgment, order, or decree being appealed." It is undisputed that Ms. Jaroscak did not appeal the Original Order within fourteen days of its entry. She did not file a notice of appeal until July 6, 2015, within the time permitted after entry of the bankruptcy court's Amended Order on June 19, 2015.[11] Thus, absent an exception to Rule 8002, the notice of appeal was untimely as to the Original Order.

---

[11] The appeal was timely filed seventeen days after the entry of the Amended Order due to the observation of the Independence Day holiday on July 3 and the intervening weekend.

17

## 2. The Amended Order did not create new rights or liabilities such that it extended the time to appeal the Original Order.

Ms. Jaroscak argues that, because the Amended Order "revised legal rights and obligations" under the Original Order, her notice of appeal was timely as to the Original Order. We disagree.

As a general rule, the time to file an appeal is extended if "the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 212 (1952). "Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew." Id. at 211-12. Stated another way, "the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." Id. at 211; see United States v. Doe, 374 F.3d 851, 853-54 (9th Cir. 2004) (stating, in a criminal context, that "[w]here a district court enters an amended judgment that revises legal rights or obligations, the period for filing an appeal begins anew"); Day v. AT&T Disability Income Plan, 608 F. App'x 454, 456 (9th Cir. 2015) ("The Supreme Court has recognized that a district court's decision to amend a judgment may re-start the period during which a litigant may appeal, provided that the amended judgment differs materially from the earlier judgment."); see also Am. Safety Indem. Co. v. Official Comm. of Unsecured

18

Creditors (In re Am. Safety Indem. Co.), 502 F.3d 70, 72 (2d Cir. 2007) ("it is well-established that [w]here a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment." (citation and internal quotation marks omitted)).

Ms. Jaroscak argues that the Amended Order revised the Original Order. She further contends that the Amended Order was a "material change" to the Original Order and that the U.S. Trustee's "inequitable conduct" was a material change.

Ms. Jaroscak fails to explain how the Amended Order changed the "legal rights and obligations" laid out in the Original Order. The Amended Order did not affect the court's factual findings against Ms. Jaroscak or affect Ms. Jaroscak's liability on the sanctions award; it only permitted Ms. Jaroscak's designee to pay the sanctions award on her behalf. The court specified multiple times that the Original Order "still holds and that the tentative ruling and the findings that were part of [the Original Order] are still very much extant."

Further, Ms. Jaroscak's argument on appeal is the exact opposite of the argument her counsel made to the bankruptcy court. Ms. Jaroscak's counsel explicitly and repeatedly confirmed that the Amended Order did not alter Ms. Jaroscak's rights or obligations under the Original Order. He stated, "the only thing that's changed is the one slight thing . . . . Other than that, everything remains the same." He reiterated that the Original Order is "only amended that the debtor is to pay -- can pay the sanctions and everything that's in that order is

19

unchanged other than that one small part." Ms. Jaroscak's counsel did not object to the court's ruling or the language of the Amended Order. In fact, her counsel drafted the Amended Order, which specified that, "[n]otwithstanding the above amendment, all other parts of the [Original] Order remain fully in force and effect."

The Amended Order did not alter any of Ms. Jaroscak's legal rights and obligations. Nothing in the Amended Order absolved her of liability or changed the court's finding of sanctionable conduct. By her counsel's own admission, the Amended Order altered only "one slight thing." Accordingly, the Amended Order did not extend the time to appeal the Original Order.[12]

**3. Even if the U.S. Trustee "lulled" Ms. Jaroscak into complacency, the time to appeal the Original Order was not extended.**

Ms. Jaroscak also argues that she did not timely appeal the Original Order because the U.S. Trustee did not object to the Stipulation and "lulled" her into not timely appealing. This contention is frivolous.

Even assuming that the U.S. Trustee engaged in any kind of

---

[12] The U.S. Trustee argues that the United States Supreme Court's decision in Bowles v. Russell, 551 U.S. 205 (2007), also precludes review of the Original Order. Bowles stands for the proposition that a time limit for taking an appeal is jurisdictional, so the failure to appeal timely divests a court of jurisdiction. The U.S. Trustee questions whether courts should continue to apply the rule of Minneapolis-Honeywell Regulator Co. following Bowles.

Because we hold that the relation-back doctrine does not apply to the facts of this case, we need not decide whether the Ninth Circuit's view of that doctrine remains valid following Bowles.

20

improper conduct (and it did not), or that equitable estoppel might apply (and it does not), the time for taking an appeal from the Original Order would not change. See Bowles, 551 U.S. at 214 (rejecting equitable considerations as a reason to extend the time to appeal, stating that the court "has no authority to create equitable exceptions to jurisdictional requirements"); Melendres v. Maricopa Cty., 815 F.3d 645, 649 (9th Cir. 2016) ("we are not at liberty to overlook a defect with the notice of appeal no matter how compelling an appellant's argument may be"); Gonzalez v. Wells Fargo Bank, N.A., No. 13-CV-02210-JST, 2014 WL 93930, at *3 (N.D. Cal. Jan. 9, 2014) (the time for appeal can only be enlarged pursuant to Rule 8002(c)).

Therefore, we conclude that we lack jurisdiction over Ms. Jaroscak's purported appeal from the Original Order.[13] The only order that we have power to review is the Amended Order.

**B.  The court did not abuse its discretion in entering the Amended Order and refusing to absolve Ms. Jaroscak of liability.**

Ms. Jaroscak contends that the bankruptcy court erred when

---

[13] Even if we had jurisdiction to consider the Original Order, we would affirm. All of Ms. Jaroscak's challenges to that order turn on the bankruptcy court's factual findings. All of those findings have evidentiary support in the record, and none of them is clearly erroneous.

We are particularly dismayed by Ms. Jaroscak's argument that, despite her ethical duty of candor to the tribunal, see Cal. R. Prof'l Conduct 5-200(B) (an attorney "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law"), she was free to use her "discretion" to decide when to tell the bankruptcy court the whole truth, rather than just part of the story. A half-truth is a half-lie.

21

it issued the Amended Order to make her "or her designee" responsible for the monetary sanctions, rather than adopting the Stipulation.

Ms. Jaroscak's briefs are not models of clarity. As far as we can tell, she thinks the court erred in two respects.[14] We reject both contentions.

**1. The bankruptcy court was not obligated to approve the Stipulation and modify the Original Order.**

Ms. Jaroscak faults the court for "rewriting the settlement" she reached with Arcadia Hub. The bankruptcy court did not err.

In the first place, it is a stretch to call the Stipulation a "settlement." By its terms, it provides that SoCal Sleep Centers, rather than Ms. Jaroscak, would pay the sanctions; it does not exonerate Ms. Jaroscak or even change the amount of the sanctions. Arcadia Hub did not agree to compromise any of its rights and claims. The e-mails make it clear that Arcadia Hub entered into the Stipulation simply because it did not care who paid the sanctions as long as someone did.

More importantly, Ms. Jaroscak's argument rests on a false assumption. She seems to think that the bankruptcy court had no choice but to approve the Stipulation. There is no authority for the proposition that a court **must** modify its orders simply because the parties ask it to. In fact, the Ninth Circuit authority is exactly to the contrary. See Nat'l Union Fire Ins.

[14] Ms. Jaroscak argued before the bankruptcy court that the Motion to Approve Stipulation satisfied Rule 9024. But she does not argue on appeal that the court erred in its application of Rule 9024, so this issue is waived.

22

Co. v. Seafirst Corp., 891 F.2d 762 (9th Cir. 1989) (the court need not vacate a judgment even when all non-defaulting parties request that it do so); Ringsby Truck Lines, Inc. v. W. Conference of Teamsters, 686 F.2d 720 (9th Cir. 1982) (a post-judgment settlement does not require vacatur of the judgment).

Further, Ms. Jaroscak waived this argument because her counsel did not oppose the entry of the Amended Order. Rather, her counsel seemed satisfied with the court's ruling. He did not take issue with the court leaving Ms. Jaroscak liable for the sanctions but allowing SoCal Sleep Centers to pay on her behalf.

**2. The U.S. Trustee was entitled to appear and be heard on the approval of the Stipulation and is entitled to participate in this appeal.**

Ms. Jaroscak claims that the U.S. Trustee should not have objected to the Stipulation and should not be heard in this appeal. This argument is meritless.

Ms. Jaroscak argues that the U.S. Trustee is advocating the private pecuniary interests of Arcadia Hub and that this is improper.[15] This argument has no legal foundation. The U.S. Trustee "may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ." § 307. The U.S. Trustee does not need to demonstrate a pecuniary interest in the outcome of the case. See Stanley v. McCormick, Barstow,

---

[15] Ms. Jaroscak also argues extensively in her Motion to Enforce that the U.S. Trustee cannot object to the Stipulation and defend this appeal in the public interest. She points to the events in the related appeal of the public-interest sanctions as proof that the U.S. Trustee no longer has any interest in this appeal. Insofar as these events occurred outside the scope of this appeal, we reject these arguments. See Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988).

23

Sheppard, Wayte & Carruth (In re Donovan Corp.), 215 F.3d 929, 930 (9th Cir. 2000). By the same token, the U.S. Trustee is free to participate even if doing so might further the private interests of one or more creditors. In fact, the U.S. Trustee's arguments in bankruptcy cases almost always affect the pecuniary interests of private parties. There is nothing wrong with that; it simply means the office is doing its job.

Ms. Jaroscak also argues that the U.S. Trustee is estopped from objecting to the Stipulation and defending the Amended Order on appeal. Ms. Jaroscak has not shown that any of the elements of equitable estoppel apply here.

The Ninth Circuit has stated that equitable estoppel requires that the proponent show: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011) (quoting Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991)).

A party asserting equitable estoppel against the government must meet a higher standard. Such a party must establish that: "(1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." Baccei v. United States, 632 F.3d 1140, 1147 (9th Cir. 2011) (citation omitted).

Ms. Jaroscak has not established a single one of these elements.

24

She has not shown that the U.S. Trustee made any false statements with the intent to induce reliance. She argues that Arcadia Hub and the U.S. Trustee "agreed there would be no sanctions against Ms. Jaroscak . . . ." She claims that Ms. Law, attorney for the U.S. Trustee, told her counsel that the U.S. Trustee "did not care" and had no opposition to the Stipulation. This recitation of the historical facts is at best incomplete. Ms. Jaroscak's counsel initiated negotiations to modify the Original Order by sending an e-mail only to Arcadia Hub's counsel. When Arcadia Hub's counsel responded, he added the U.S. Trustee (Ms. Law) to the e-mail string. In that e-mail, Arcadia Hub's counsel stated that he did not care who paid the sanction, but Arcadia Hub was "not going to agree to amend the Order, even if the Court would consider it. The Order has already been entered, with the detailed findings concerning Ms. Jaroscak in the attached tentative ruling. As damaging as that may be to her, that bell can't be un-rung." However, when Ms. Jaroscak's counsel responded, he removed Ms. Law from the e-mail string. The U.S. Trustee was not involved in any further discussions or even aware of the terms of the Stipulation until after it was filed. Therefore, the record shows only that the U.S. Trustee knew about, and did not object to, Arcadia Hub's position stated in the e-mail - that it did not matter who paid the sanctions, but the findings of sanctionable conduct would stand. The U.S. Trustee has consistently adhered to that position.

Ms. Jaroscak fails to demonstrate that she detrimentally relied on the U.S. Trustee's statements. The U.S. Trustee did

25

nothing to prevent or discourage her from filing a timely appeal or taking any other steps to protect her interests.

Ms. Jaroscak also fails to address the heightened standard for government entities. She does not present any evidence or argument that the U.S. Trustee engaged in affirmative misconduct going beyond mere negligence, that its actions caused a serious injustice, or that preventing the U.S. Trustee from challenging the Stipulation will not unduly damage the public's interest.

In short, the U.S. Trustee was entitled to appear and be heard on these issues in the bankruptcy court and before the Panel.

**C.    The Motion to Enforce is meritless.**

Finally, Ms. Jaroscak requests that we enforce a supposed "settlement" between herself, Arcadia Hub, and SoCal Sleep Centers that they reached in March 2016. In essence, she asks us to do exactly what the bankruptcy court refused to do. This request is frivolous.

In the first place, contrary to Ms. Jaroscak's representations, there is no "new settlement." The so-called "settlement" consists only of a letter from Arcadia Hub stating that it is still "satisfied with" the Stipulation and a letter from SoCal Sleep Centers stating that "the stipulation was approved on behalf of SoCal Sleep Centers at the time it was signed, and remains approved on behalf of SoCal Sleep Centers." The parties' decision to reaffirm, rather than repudiate, the Stipulation is not a "new" agreement.

Second, even if there was a "new agreement" (and there is not), Ms. Jaroscak mischaracterizes it. As we have explained,

26

the Stipulation does not exonerate her. Rather, as **her own attorney** told the bankruptcy court, it simply provides that her client will pay the sanctions for her.

Third, approval of the supposed "new settlement" would not terminate this appeal because the U.S. Trustee, the only appellee in this appeal, is not a party to it. See Hatami v. Kia Motors Am., Inc., No. SACV 08-226 DOC, 2011 WL 1456192, at *1 (C.D. Cal. Apr. 14, 2011) ("The Court cannot enforce a purported settlement agreement unless all of the terms of that agreement have been agreed to by both parties.").

Finally, Ms. Jaroscak's argument is a blatant attempt to offer new evidence on appeal, exceed the size limits for appellate briefs, and evade the standard of appellate review. She wants us to approve the "settlement" ourselves, without any regard for the bankruptcy court's decision. That is not the function of an appellate court.

At oral argument, the Panel asked Ms. Jaroscak exactly what relief she sought. The parties to the Stipulation have done exactly what they agreed to do; the bankruptcy court did not amend its order exactly as the Stipulation provided, but Ms. Jaroscak does not claim that the Stipulation is somehow "enforceable" against the court. Her counsel responded that she simply wants clarification that SoCal Sleep Centers may pay the sanctions on her behalf. We acknowledge that, under the bankruptcy court's orders, it was permissible for SoCal Sleep Centers to pay the sanctions on her behalf.

Accordingly, we DENY the Motion to Enforce.

27

**CONCLUSION**

For the reasons set forth above, we AFFIRM.